UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

United States District Court
District of Connecticut
FILED AT      WATERBURY
10/16         20 03
Kevin F. Rowe, Clerk
By _____ Deputy Clerk

ANDERSON, KILL & OLICK, P.C., :
:
          Plaintiff, :   NO. 3:02CV1258 (GLG)
:
V. :
:
ROBERT L. PRESSMAN, :
:
          Defendant. :   OCTOBER 16, 2003

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR DIRECTED VERDICT**

Defendant having rested following his case in chief, Plaintiff Anderson, Kill & Olick, P.C. (hereinafter, "Anderson Kill") now moves pursuant to Rule 50 Fed.R.Civ.P. for a directed verdict on the following: (1) its own claim for breach of contract; (2) both of Defendant's two counterclaims (for lawyer malpractice and for breach of fiduciary duty); and (3) each of Defendant's affirmative defenses (payment and lawyer malpractice setoff).

First, with respect to Plaintiff's own claim for breach of contract, each of the elements to support this claim have been established in evidence. Mr. Pressman offered no evidence to show why Plaintiff should not recover on this claim, did not present legally sufficient evidence that his performance under the contract is excused, or otherwise supported his affirmative defenses (*see* below), and the overwhelming weight of the evidence therefore supports a judgment as a matter of law on Plaintiff's claim for recovery under its written fee agreement.

Second, with respect to Mr. Pressman's legal malpractice counterclaim (Count One), Defendant's failure to offer expert opinion testimony on the applicable standard of care, how Anderson Kill failed to satisfy that standard, and the element of causation is dispositive. Having failed to offer any such expert testimony, there is no way in which the jury could properly find for Defendant on this counterclaim.

Third, with respect to the breach of fiduciary duty counterclaim, Mr. Pressman could not and did not support a legally sufficient claim that the law firm's withholding of his file, amounted to a breach of a fiduciary duty owed to him for two independent reasons: (1) under all the circumstances -- including the court order permitting its withdrawal for Defendant's non-payment of his fees -- the firm was specifically *authorized* to withhold the file as New York law permits a law firm withdrawing from representation to retain the file pending payment; and (2) Mr. Pressman did not, and could not, establish a required element of a prima facie claim of a fiduciary breach: that his lawyers' decision to exercise its retaining lien rights was the *cause* of any compensable harm. Therefore, Plaintiff is entitled to a verdict directed in its favor on Defendant's counterclaim of breach of fiduciary duty.

Fourth, with respect to Defendant's affirmative defenses to Plaintiff's breach of contract claim, as suggested above, Plaintiff is entitled to a directed verdict in its favor because: (1) the defense Mr. Pressman has labeled "set-off" is not legally sufficient since it is based on Anderson Kill's supposed liability to him on a claim that is not encompassed within Anderson Kill's claim to recover

on Mr. Pressman's unpaid account, but instead is *contingent* on a judgment in his favor on a separate, distinct and unmatured cause of action; namely his professional negligence counterclaim, which he expressly incorporated into his "set off" defense; and (2) any legally sufficient defense to Plaintiff's debt claim based on substandard legal work in the underlying New York litigation, required Mr. Pressman to present the jury with evidence he did not provide; namely *expert opinion testimony* on the both standard of care expected of a New York law firm under the circumstances, and how the Plaintiff law firm supposedly violated that standard of professional care.

## STANDARD FOR GRANTING DIRECTED VERDICT

"Under Rule 50, judgment as a matter of law is only appropriate where 'there is no legally sufficient evidentiary basis for a reasonable jury to find for a party.'" *Neptune Group, Inc. v. MKT, Inc.*, 205 F.R.D. 81, 84-85 (D. Conn. 2002) (quoting *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 120 (2d Cir. 1998)). "'[A] court may properly grant judgment as a matter of law where viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.'" *Id.* at 85 (quoting *Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir. 1993) *cert. denied*, 513 U.S. 1171 (1995)).

"The standard to be applied in deciding a motion for a directed verdict is whether 'the evidence, viewed in the light most favorable to the non-movants

3

without considering credibility or weight, reasonably permits only a conclusion in the movants' favor.'" *Nordquist v. Uddeholm Corp.*, 615 F. Supp. 1191, 1196 (D. Conn. 1985) (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 323 (2d Cir. 1983). "In examining the evidence with regard to each of the defendant's asserted bases for a directed verdict, the court must give the non-moving party, here the plaintiff, 'the benefit of all reasonable inferences which may be drawn in his favor from that evidence.'" *Id.* (quoting *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir. 1970).

A plaintiff is authorized to be the moving party on a Rule 50 motion with respect to its own claims for relief. *See Dixon v. Stamford Taxi, Inc.*, 115 F.R.D. 312, 314 (D. Conn. 1987) (denying plaintiff's motion for judgment n.o.v, "because of plaintiff's failure to move for a directed verdict at trial, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure").

## ARGUMENT

### I. EVEN VIEWING THE EVIDENCE IN THE LIGHT MOST FAVORABLE TO THE DEFENDANT, A REASONABLE JURY CAN ONLY REACH A CONCLUSION IN FAVOR OF PLAINTIFF ON ITS BREACH OF CONTRACT CLAIM

Anderson Kill's claim for the recovery on Mr. Pressman's outstanding unpaid account, is based on a theory of breach of contract. The elements of this cause of action are: (1) the formation of a contract between plaintiff and defendant, (2) performance by one party; (3) failure to perform by the other party, and (4) resulting damage. *Ledain v. Town of Ontario*, 746 N.Y.S.2d 760, 763 (N.Y. Sup. 2002).

4

At trial, Anderson Kill has proven each of these elements, and Defendant has not presented sufficient evidence to dispute the proof of these elements. Mr. Pressman did not dispute that he entered into an agreement to retain Anderson Kill, that Anderson Kill indeed represented him in the New York litigation against his sisters, and that he has not paid the bills in full. In light of the undisputed facts, there is no legally sufficient evidentiary basis for the jury to rule for Mr. Pressman on this claim. Even taking the evidence in the light most favorable to Mr. Pressman, the only rational verdict that can be reached is one in favor of Anderson Kill.

Given the undisputed nature of the evidence on Plaintiff's *prima facie* case for breach of contract, the only way in which judgment as a matter of law would not be available is if Mr. Pressman could prevail on affirmative defenses that his breach somehow was excused, by establishing either that full payment was made, or that the law firm's services were substandard. As Plaintiff argues below in Section IV, Defendant has failed to present the jury with a legally sufficient evidentiary basis to prevail on either of these defenses. Therefore, for the reasons discussed above, as well as below in Section IV, Anderson Kill is entitled to judgment as a matter of law on its claim for breach of contract.

## II. FAILURE TO PRODUCE AN EXPERT OPINION TO ESTABLISH THE APPLICABLE STANDARD OF CARE AND CAUSATION IS FATAL TO DEFENDANT'S LEGAL MALPRACTICE COUNTERCLAIM

It is well established that under New York law, a legal malpractice claimant must produce expert opinion testimony on three distinct subjects: (1) the applicable professional standard of care; (2) the defendant-lawyer's breach of

5

that standard of care; and (3) that such breach was the proximate cause of the injuries claimed by the client. *Kranis v. Scott*, 178 F. Supp. 2d 330, 334 (E.D.N.Y. 2002). The only exceptions to this rule apply when "the ordinary experience of the fact-finder provides sufficient basis for judging the adequacy of the professional service, or the attorney's conduct falls below any standard of due care." *Id.* (citations omitted). If neither exception applies, the claimant "must introduce expert testimony in order to establish a *prima facie* case sufficient for presentation to the jury." *Id.* (citing *Active Operations Corp. v. Lampert*, 495 N.Y.S.2d 689, 690 (App. Div. 1985) (affirming dismissal of claim at close of plaintiff's case where plaintiff failed to present expert testimony on professional standard of care)).

As to the first and second issues, since a malpractice claim alleges a breach of the standard of care by the attorney, the jury must be presented with expert testimony as to what that standard is, and how the attorney's conduct deviated from that standard. New York courts hold that in a legal malpractice action, "a plaintiff generally must present expert opinion evidence on the attorney's duty of care." *Zeller v. Copps*, 741 N.Y.S.2d 343 (App. Div. 2002). Summary judgment was awarded to one defendant law firm where the plaintiff submitted "no expert affidavit describing the applicable standard of care." *Ehlinger v. Ruberti, Girvin & Ferlazzo, P.C.*, 758 N.Y.S.2d 195 (App. Div. 2003).

The law firm in this case is entitled to judgment as a matter of law in light of Mr. Pressman's failure to offer *any* expert opinion testimony regarding: (1) the applicable and customary standard of professional care; (2) how Anderson Kill's

6

conduct deviated from that standard of care; or (3) how that supposed deviation *caused* Mr. Pressman any compensable injury.

A legal malpractice claimant also must establish through expert opinion testimony that the attorney's failure to meet the standard of care caused compensable loss to the claimant. With respect a claimant, like Mr. Pressman in this case, who points to an unfavorable result in prior litigation, the claimant's expert must explain to the jury that it was the defendant law firm's breach of the applicable standard of care which was the *cause* of the unsuccessful outcome in the underlying litigation, and that the client would have prevailed absent the firm's negligence. In *Ehlinger*, one basis for the award of summary judgment to the defendant law firm was the plaintiff's failure to supply expert evidence opining that if the defendant had taken certain actions, those actions would have been successful. *Id.* Here, Mr. Pressman offered *no* expert witness to tell the jury what standard of professional care applied to Anderson Kill's representation in the underlying New York litigation, or that the alleged breach of the standard of care caused Mr. Pressman's subsequent loss in that New York litigation.

Under New York law, the failure to introduce expert opinion testimony in support of a legal malpractice claim is a proper basis to grant summary judgment against a plaintiff-client. *See Ehlinger*, 758 N.Y.S.2d 195; *Brown v. Samalin & Bock, P.C.*, 563 N.Y.S.2d 426, (App. Div. 1990) (legal malpractice claim dismissed on summary judgment motion "since the plaintiff did not adequately oppose the motion with the expert evidence which the issues warranted"). If a claimant's failure of proof justifies the entry of summary judgment against the

7

claimant *prior to trial*, it follows them, that the same failure of proof justifies the entry of a *directed verdict* at trial. *See Active Operations Corp.,* 495 N.Y.S. 2d at 690.

In the present case, Defendant's failure to submit expert evidence on three elements of his legal malpractice counterclaim -- elements that absent one of two exceptions *must be proven through expert testimony* -- entitles Anderson, Kill & Olick to judgment on that claim and therefore a directed verdict in its favor under Rule 50.

III.  **DEFENDANT COULD NOT, AND DID NOT, MEET HIS BURDEN OF PROVING EITHER THAT PLAINTIFF HAD A LEGAL DUTY TO TURN OVER HIS LITIGATION FILE UPON WITHDRAWAL, OR THAT PLAINTIFF'S REFUSAL TO TURN OVER THE FILE BREACHED THAT DUTY OR CAUSED HIM ANY COMPENSABLE INJURY.**

The sole basis for Mr. Pressman's breach of fiduciary duty counterclaim (Count Two) is that the Plaintiff law firm wrongfully withheld Mr. Pressman's litigation file, rather than turning it over to him or to his new counsel. Regardless of the evidence Mr. Pressman has offered to support that claim (and putting to one side the absence of any *expert* testimony that the firm's decision to exercise its retention lien rights was the *cause* of any injury to Mr. Pressman), the firm is now entitled to a directed verdict for at least one reason: under the circumstances, it owed no duty to Mr. Pressman under New York law to turn the file over. In fact, a withdrawing law firm is specifically *authorized* under New York law to impose a retaining lien on *a delinquent client's* file. *See Kahn v. Kahn,* 588 N.Y.S.2d 658 (App. Div. 1992).

After asking permission from the New York court in the underlying case,

8

Anderson Kill received specific court authorization to withdraw its appearance. Moreover, such authorization was granted in light of the firm's specific request that it be relieved based on Mr. Pressman's delinquent account with the firm. This is not disputed. Under the common law of New York, "an attorney is entitled to a retaining lien on 'all client papers and property, including money, that come into the attorney's possession in the course of employment.'" *Universal Acupuncture Pain Services, P.C. v. State Farm Mut. Auto. Ins. Co.*, 232 F. Supp. 2d 127, 131 (S.D.N.Y. 2002) (quoting *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir. 1991)). That retaining lien "remains in effect until the attorney has been reimbursed for expenses and, as a general rule, the attorney's fee has been determined and either paid or secured." *Id.*

In addition, it is undisputed that in the present case, Anderson Kill entered into court-ordered mediation with Mr. Pressman to resolve its unpaid fee demand. The pending civil action was stayed during the mediation. The mediation was designed to resolve the payment issue so that Anderson Kill would release Mr. Pressman's file in return for Mr. Pressman's commitment to make satisfactory payment arrangements on his unpaid account with the firm. In accordance with its retention lien rights, Anderson Kill retained its files in the underlying New York case pending a resolution of the mediation. That mediation resulted in a tentative agreement for payment to Anderson Kill. But significantly, Mr. Pressman -- through his successor counsel -- reneged on the agreement and knowingly *elected* to proceed to trial *without* the Anderson Kill files.

New York common law specifically permits a withdrawing attorney to place

9

a retaining lien on the file. Therefore, in the present case, there is no legally sufficient evidentiary basis (expert or otherwise) for a reasonable jury to find that Anderson Kill breached any fiduciary duty by asserting its recognized lien rights under New York law. Mr. Pressman offered no evidence that the firm's action was not authorized by law. Accordingly, Anderson Kill is entitled to a directed verdict on Mr. Pressman's counterclaim for breach of fiduciary duty.

There is a separate, and independent, reason to enter a directed verdict on Mr. Pressman's breach of fiduciary counterclaim: the failure of the claimant to offer the jury sufficient evidence that Anderson, Kill's decision to exercise its possessory lien rights *caused* Mr. Pressman any compensable loss or injury. Under New York, the failure to establish either causation or proof of an actual loss is fatal to a claim of fiduciary breach. See *Tuckman v. Wachlel*, 606 N.Y.S. 2d 679 (N.Y. App. Div. 1994) (directing entry of pre-trial judgment dismissing, *inter alia*, legal malpractice and breach of fiduciary duty claims against defendant attorneys where the plaintiff "failed...to demonstrate any loss to *him*, an essential element of a cause of action for 'legal malpractice...as well as the...closed related causes of action [including]...breach of fiduciary duty...in the complaint.").

### IV. NO REASONABLE JURY COULD FIND FOR DEFENDANT ON EITHER OF HIS AFFIRMATIVE DEFENSES, AND THEREFORE PLAINTIFF IS ENTITLED TO A DIRECTED VERDICT ON ITS BREACH OF CONTRACT CLAIM

Defendant cannot properly rely on either of his affirmative defenses to avoid liability for his breach of the August 19, 1999 fee agreement. In his Answer, Defendant asserted two affirmative defenses. Defendant first alleges

that he was "unreasonably overcharged" in that the services provided were unreasonably multiplied; that the hours billed were inflated; and that he did not agree in advance to pay increased rates when the firm raised its hourly rates. Defendant's second affirmative defense is that he is entitled to a setoff for his counterclaims.

Plaintiff is entitled to a directed verdict on both affirmative defenses and hence to judgment on its claim.

The first affirmative defense fails because Defendant has not provided expert testimony in support of his claim that the fees charged were unreasonable. Defendant's claim that "the services of multiple attorneys were unreasonably used at court appearances, depositions and various other legal endeavors," is simply another way of stating that the services provided did not meet reasonable professional standards. As set forth above, where a claim requires determinations regarding attorney conduct and the applicable standard of care, the claimant must produce expert testimony in support of his claim. See Section II, above. The only exceptions to the rule requiring expert testimony are when "the ordinary experience of the fact-finder provides sufficient basis for judging the adequacy of the professional service, or the attorney's conduct falls below any standard of due care." *Kranis*, 178 F. Supp. 2d at 334 (citations omitted). See also Ronald E. Mallen and Jeffrey M. Smith, *Legal Malpractice* (5th Ed. 2000) Vol. 5. §33.16 ("Expert testimony can be essential to challenge the reasonableness of legal fees or to seek a set-off from legal fees because of legal

malpractice. . . . [W]hether one or multiple lawyers are necessary to conduct a deposition requires expert testimony.").

The reasonableness of attorney staffing decisions on client matters and the reasonableness of the fees charged for professional legal services are not, and cannot be, matters within "the ordinary experience" of the jury. Accordingly, they require expert opinion testimony. Defendant has failed to produce expert testimony that in the underlying litigation Anderson Kill's staffing decisions were improper, or that the services were unnecessary. Defendant has failed to identify any specific instance of inflated hourly billing, much less produced expert evidence of such. And Defendant has failed to offer evidence that, under his fee agreement with the firm, the firm was precluded from increasing hourly rates. These evidentiary failures are fatal to the first affirmative defense.

Defendant's second affirmative defense – a claim of setoff – is unavailing for at least three reasons. First, the claim is one more properly pled as a counterclaim. *Valley Disposal, Inc. v. Central Vermont Solid Waste Management District*, 113 F.3d 357, 364 (2d Cir. 1997) ("Under the Federal Rules of Civil Procedure, a defendant's claim of setoff against a plaintiff is to be made by means of counterclaim in its answer to the complaint.").

Second, even if construed as a counterclaim, Defendant has not asserted a legally sufficient claim for setoff. Defendant's setoff claim rests on a contingency that has not occurred: that is, an adjudication in his favor on the counterclaims. There has been no adjudication of any debt or obligation owed to Defendant.

12

> Unmatured or contingent claims cannot be used as a setoff or counterclaim. A claim or demand is generally mature only when presently enforceable. Therefore, a defendant ordinarily cannot plead a contingent liability as a setoff, if the circumstances on which the liability is contingent have not occurred. . . . If the adjudication of a fact, as opposed to the existence of the fact, is a necessary element of a valid counterclaim, the counterclaim is premature until such adjudication.

20 Am.Jur.2d *Counterclaim, Recoupment, and Setoff*, § 19 (1995).

Third, even if the setoff claim were deemed properly pled, Plaintiff has *expressly incorporated* into his setoff his counterclaims of legal malpractice and breach of fiduciary duty. And as argued above in Sections II and III, Plaintiff is entitled to a directed verdict in its favor on both those counterclaims because Mr. Pressman has failed to present the jury with a legally sufficient basis to support either claim, including an offer of required expert testimony.

Considering the weight of all the evidence at trial, Defendant has failed to meet his evidentiary burden to support either of his two affirmative defenses. Plaintiff is therefore entitled to a directed verdict on each such defense and, accordingly, entitled to a directed verdict on its own affirmative claim for breach of contract.

13

## CONCLUSION

For all of the foregoing reasons, and for the reasons presented orally to the Court, Plaintiff requests the Court to direct a verdict in its favor on its claim for breach of contract, on Defendant's two Counterclaims and on Defendant's two affirmative defenses.

Dated at Bridgeport, Connecticut, this 16th day of October, 2003.

*/s/ David P. Atkins*
David P. Atkins (ct04819)
Joel H. Thompson (ct24654)

>Zeldes, Needle & Cooper, P.C.
>1000 Lafayette Blvd.
>P.O. Box 1740
>Bridgeport, Connecticut 06604
>Ph. (203) 333-9441
>Fax: (203) 333-1489
>Email: datkins@znclaw.com
>       jthompson@znclaw.com

Attorneys for Plaintiff
Anderson, Kill & Olick, P.C.

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been hand-delivered, on this date to:

Robert L. Pressman
51 West 52nd Street
New York, NY, 10019

Dated at Bridgeport, Connecticut this 1)^th day of October, 2003.

_____
David P. Atkins

15